**Brand PATTON, Petitioner,**

v.

**The PEOPLE of the State of
Colorado, Respondent.**

No. 00SC82.

Supreme Court of Colorado,
En Banc.

Nov. 13, 2001.

Jane Hazen, Denver, CO, Attorney for Petitioner.

Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Denver, CO, Attorneys for Respondent.

Justice HOBBS delivered the Opinion of the Court.

Petitioner Brand Patton pleaded guilty to one count of manufacturing and one count of possessing methamphetamine, a schedule II controlled substance, both counts in violation of section 18–18–405(1)(a), 6 C.R.S. (2000). We granted certiorari in *People v. Patton,* 7 P.3d 1057 (Colo.App.1999), to determine whether Patton could lawfully be convicted and punished on both counts pursuant to his guilty plea in light of the double jeopardy provisions of the Colorado and United States Constitutions.[1] The court of appeals held that Patton was not entitled to dismissal of either conviction. We disagree. Patton sufficiently demonstrated a double jeopardy violation, and we vacate his conviction and sentence for possession of methamphetamine.

## I.

This case arises out of several different charges in multiple cases, each involving the manufacture and possession of methamphetamine. On February 4, 1997, police searched Patton's residence in Craig pursuant to a warrant, and discovered products and chemicals used to manufacture methamphetamine. The search, however, did not disclose the actual presence of methamphetamine in Patton's home. The prosecution filed a multidefendant information in Case No. 97CR26,[2]

1. We granted certiorari on the following issue: "Where the record at the providency hearing establishes possession of an illegal drug only in conjunction with the manufacture of that drug, does the offense of possession of methamphetamine merge with the offense of manufacture, so that conviction of both offenses is a violation of guarantees against double jeopardy under the Colorado and United States Constitutions?"

2. The search of Patton's home and his subsequent arrest were part of a larger effort by local and federal drug enforcement authorities to lo-

charging Patton with manufacturing meth- amphetamine, possessing methamphetamine, possessing ephedrine, conspiring to manufac- ture or distribute methamphetamine, con- spiring to manufacture or distribute ephed- rine, possession of a deadly weapon, and possession of drug paraphernalia. The infor- mation alleged that all charged offenses took place in Moffat County between October 1, 1996 and February 4, 1997.

Patton was released on bond, but was ar- rested again in July 1997, following another search of his house pursuant to a warrant. This search turned up methamphetamine residue on approximately four items in the home. In Case No. 97CR125, the People charged Patton by information with two counts of unlawful distribution, manufactur- ing, dispensing, sale, and possession of meth- amphetamine. The information also charged Patton with one count of conspiracy to com- mit unlawful distribution, manufacturing, dis- pensing, sale, and possession of methamphet- amine. All offenses were alleged to have been committed between February 5, 1997 and July 17, 1997. The trial court subse- quently ordered the two cases joined for further disposition.

In November 1997, the prosecution and Patton reached a plea agreement. The pros- ecution amended the count of unlawful manu- facture of methamphetamine in the first case (97CR26) to charge manufacture during the period from October 1, 1996 to July 17, 1997. Patton agreed to plead guilty to that count, as well as to one count of unlawfully possess- ing methamphetamine between October 1, 1996 and February 4, 1997, a period five months shorter than the manufacture period. The prosecution agreed to dismiss all other counts against Patton in both pending cases.

In his written guilty plea advisement form, Patton agreed that there was a factual basis for entering his guilty pleas to both the manufacture and possession offenses, and waived any further establishment of a factual basis. In the course of the guilty plea pro- ceeding, the prosecution offered two police affidavits to establish the factual basis of the charges. Patton did not object to the use of

the affidavits. The trial court accepted Pat- ton's guilty pleas and convicted him on the manufacturing and possession counts.

At the sentencing hearing, Patton admit- ted to the trial court that he had a metham- phetamine addiction, and that he had pro- duced "a small amount" of the drug for his own use. Patton also submitted a written statement to the trial court, which read in part:

> I have been addicted to meth ... for a long time. I did make meth for my own use. [Other] people would make meth with me and keep some for their own use!

The trial court sentenced Patton to twelve years in the Department of Corrections on the manufacturing charge and six years in the Department of Corrections on the pos- session charge, the sentences to run concur- rently.

Patton subsequently contested the trial court's sentence, arguing that the crime of possession of a controlled substance is a less- er-included offense of the crime of unlawful manufacture of that substance, because pos- session is a natural consequence of its manu- facture. Patton asserted that conviction for both crimes violated the double jeopardy pro- vision of both the Colorado and United States Constitutions. The court of appeals rejected Patton's claim, holding that "it is not evident from the face of the information and the record existing at the time defendant entered his guilty pleas that the convictions were based on identical conduct or even one continuing course of conduct." *Patton*, 7 P.3d at 1059. This appeal followed.

## II.

We reverse the judgment of the court of appeals. We determine that Patton has suf- ficiently demonstrated a double jeopardy vio- lation. Possession is a lesser-included of- fense of manufacture, and the information to which Patton pleaded guilty at the time of the providency hearing contained no allega- tion other than that Patton possessed the controlled substance in connection with man-

cate laboratories for the manufacture of metham- phetamine and amphetamine. The information

in Case No. 97CR26 listed seven defendants in- cluding Patton.

ufacturing it. We order that the conviction and sentence for possession be vacated.

## A.

### Scope and Effect of a Guilty Plea

■ We begin by discussing the long-established principles of law concerning guilty pleas. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *People v. Kyler*, 991 P.2d 810, 816 (Colo.1999)(quoting *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969))(internal quotation marks omitted). It follows that when a defendant enters a plea of guilty, he admits committing the substantive crime charged against him. *See People v. Sandreschi*, 849 P.2d 873, 875 (Colo.App.1992).

■ By pleading guilty, a defendant waives a number of important constitutional rights, including the right against self-incrimination, the right to trial by jury, the right to confront one's accusers, the right to a speedy and public trial, the right to insist at trial that the prosecution establish guilt beyond a reasonable doubt, and the right to present witnesses at trial on the defendant's behalf. *People v. Schneider*, 25 P.3d 755, 759–60 (Colo.2001); *People v. Johnson*, 999 P.2d 825, 832 (Colo.2000); *People v. Lesh*, 668 P.2d 1362, 1367 (Colo.1983). The General Assembly has provided that the court's acceptance of a guilty plea "acts as a waiver by the defendant of the right to trial by jury on all issues including the determination of the penalty to be assessed, and the acceptance of such plea also acts as a conviction for the offense." § 16–7–206(3), 6 C.R.S. (2000).

■ Because a guilty plea effectuates such an extensive waiver, a challenge to the conviction entered thereon is normally limited to whether the plea itself was voluntary and intelligent.[3] *See, e.g., Schneider*, 25 P.3d at 760–61; *Kyler*, 991 P.2d at 816; *see also United States v. Broce*, 488 U.S. 563, 569, 109

S.Ct. 757, 102 L.Ed.2d 927 (1989)("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.").

■ A narrow exception to this rule permits collateral attacks on guilty pleas where the court lacked the power to enter the conviction or impose the sentence in the first instance. *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989); *Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Blackledge v. Perry*, 417 U.S. 21, 30–31, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). "[A] plea of guilty to a charge does not waive a claim that—*judged on its face*—the charge is one which the State may not constitutionally prosecute." *Broce*, 488 U.S. at 575, 109 S.Ct. 757 (emphasis in original). In *Broce*, the United States Supreme Court, describing *Menna* and *Blackledge*, emphasized that the double jeopardy inquiry focuses on whether the United States Constitution forbids the prosecution from bringing the defendant to court on the charges for the conviction under attack. *Id.* "Where the State is precluded by the United States Constitution from haling the defendant into court on a charge, ... a conviction on that charge [must] be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Menna*, 423 U.S. at 62, 96 S.Ct. 241 (citing *Blackledge*, 417 U.S. at 30, 94 S.Ct. 2098).

We now turn to Patton's contention that unlawful possession of a controlled substance in the course of its manufacture is a lesser-included offense of the manufacturing crime for purposes of double jeopardy analysis.

## B.

### Double Jeopardy and Lesser–Included Offenses

■■ Under the Double Jeopardy Clauses of both the United States and Colorado Constitutions, the state may not punish a

---

3. The court must advise the defendant of the rights the defendant will waive if the court accepts the plea, as well as the maximum and minimum penalties the court may impose. § 16–

7–206(1)(a). The defendant's guilty plea must be voluntary, intelligent, and supported by the record. *People v. Wade*, 708 P.2d 1366, 1368 (Colo. 1985).

person twice for the same offense. U.S. Const. amend. V; Colo. Const. art. II, § 18. This protection specifically includes guarantees that the accused will not be subject to multiple punishments imposed in the same criminal prosecution for statutory offenses proscribing the same conduct. *Boulies v. People,* 770 P.2d 1274, 1278 (Colo.1989).[4] For the purpose of determining whether double jeopardy principles bar multiple punishments for the same criminal conduct, we read the state and federal Double Jeopardy Clauses to be coextensive. *People v. Leske,* 957 P.2d 1030, 1035 n. 6 (Colo.1998); *Boulies,* 770 P.2d at 1278.

■■■■■ The Double Jeopardy Clauses do not prevent the legislature from specifying multiple punishments based upon the same criminal conduct. *See* U.S. Const. amend. V.; Colo. Const. art. II, § 18. "For purposes of both double jeopardy and merger, a defendant may be subjected to multiple punishments based upon the same criminal conduct as long as such punishments are 'specifically authorized' by the General Assembly." *Leske,* 957 P.2d at 1035; *see also People v. Henderson,* 810 P.2d 1058, 1061 (Colo.1991)(noting that "[t]he role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization"). In the absence of express legislative authorization, the court must ascertain whether the offenses are sufficiently distinguishable to permit imposition of multiple punishments. *Ohio v. Johnson,* 467 U.S. 493, 499 n. 8, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984); *Leske,* 957 P.2d at 1036.

We conduct a two-part inquiry in this regard. First, did the General Assembly clearly authorize separate punishments for the unlawful manufacture of a controlled substance and the unlawful possession entailed thereby? Second, if there was no such express authorization, are these offenses otherwise sufficiently distinguishable to permit

multiple punishment? *See Boulies,* 770 P.2d at 1279.

### 1. Legislative Authorization

■■■■ "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature ... intended that each violation be a separate offense." *Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). If the legislative intent to create separate offenses is clear from the face of the statute or the legislative history, our double jeopardy inquiry ends. *Id.* at 778–79, 105 S.Ct. 2407.

The manufacturing and possession charges against Patton were each brought pursuant to section 18–18–405. That section provides, in relevant part:

**18–18–405. Unlawful distribution, manufacturing, dispensing, sale, or possession.** (1)(a) Except as authorized by part 3 of article 22 of title 12, C.R.S., or by part 2 or 3 of this article, it is unlawful for any person knowingly to manufacture, dispense, sell, distribute, possess, or to possess with intent to manufacture, dispense, sell, or distribute a controlled substance....

. . . .

(2) Except as is otherwise provided for offenses concerning marihuana and marihuana concentrate in section 18–18–406 and offenses involving minors in section 18–18–407(1)(g), any person who violates any of the provisions in subsection (1) of this section:

(a) In the case of a controlled substance listed in schedule I or II of part 2 of this article,[5] commits:

(I) A class 3 felony; except that a person commits a class 4 felony if such violation is based on the possession of a controlled substance listed in schedule

---

4. The constitutional guarantee against double jeopardy serves several purposes: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio,* 432 U.S. 161, 165–66, 97 S.Ct. 2221, 53

L.Ed.2d 187 (1977); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

5. Methamphetamine is classified as a schedule II controlled substance. § 18–18–204(2)(c)(II), 6 C.R.S. (2000).

II unless otherwise provided in paragraph (a) of subsection (3) of this section.

Section 18–18–405(1) does not expressly provide that possession in the course of manufacturing a controlled substance is a separately punishable offense. Nor do we view the language of section 18–18–405(2)(a)(I), which characterizes possession as a class 4 felony rather than a class 3 felony, as authorizing separate punishment for such possession in the course of manufacture. Section 18–18–405(2)(a)(I) initially categorized possession as a class 3 felony. *See* ch. 71, sec. 1, § 18–18–405, 1992 Colo. Sess. Laws 324, 356. In 1994, the section was amended as part of an omnibus crime bill to punish possession as a less serious offense. The legislators were primarily addressing possession for personal use. *See* ch. 287, sec. 24, § 18–18–405, 1994 Colo. Sess. Laws 1714, 1723.

The legislative history of the 1994 amendment clarifies that the separate classification for possession in section 18–18–405(2)(a)(I) was not intended to cover possession of a drug in the course of its manufacture.[6] We conclude that the statutes do not authorize separate punishments for unlawful manufacture of a controlled substance and possession in the course thereof.

### 2. The Statutory Elements Test

The General Assembly has provided that "[w]hen any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." § 18–1–408(1), 6 C.R.S. (2000). However, a defendant may not be punished multiple times for the same conduct if "[o]ne offense is included in the other." § 18–1–408(1)(a). A lesser offense is "included" in a greater offense when it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." § 18–1–408(5)(a).

We have construed section 18–1–408(5)(a) to require a comparison of the statutory elements of each offense in order to determine whether an offense is within the lesser-included category. *See, e.g., Leske*, 957 P.2d at 1036; *People v. Garcia*, 940 P.2d 357, 361 n. 3 (Colo.1997); *Armintrout v. People*, 864 P.2d 576, 579 (Colo.1993); *People v. Rivera*, 186 Colo. 24, 27, 525 P.2d 431, 433 (1974). We have described the "statutory elements test" as follows:

> If proof of the facts establishing the statutory elements of the greater offense necessarily establishes all of the elements of the lesser offense, the lesser offense is included for the purposes of section 18–1–408(5)(a). If, however, each offense necessarily requires proof of at least one additional fact which the other does not, the strict elements test is not satisfied and a presumption arises that convictions for both offenses is consistent with legislative intent.

*Leske*, 957 P.2d at 1036 (internal citations and quotation marks omitted); *see also Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)(stating that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not").

The elements of manufacture of a controlled substance are: 1) that the defendant; 2) in the State of Colorado, on or about the date and place charged; 3) knowingly or intentionally; 4) manufactured; 5) the controlled substance. CJI–Crim. 36:02 (1983). The elements of possession of a controlled substance are: 1) that the defendant; 2) in the State of Colorado, on or about the date or place charged; 3) knowingly and intentionally; 4) possessed; 5) the controlled substance. *Id.; Richardson v. People*, 25 P.3d 54, 56 (Colo.2001). The elements of both

---

**6.** The General Assembly discussion included testimony that "pure possession" of small amounts of drugs "for personal use only" could be "handled very appropriately and appropriate sentences can be given under the class four category." Hearing on H.B. 94–1126 before the Senate Judiciary Committee, 59th General Assembly, Second Session (January 27, 1999). *See also People v. Pierrie*, 30 P.3d 816, 819 (Colo.App. 2001), *cert. denied*, No. 01SC350 (Sept. 10, 2001).

crimes are identical except for the terms "manufactured" and "possessed." We now examine the meaning of both terms.

The statutory definition of "manufacture" is "to produce, prepare, propagate, convert, or process a controlled substance, directly or indirectly, by extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container." § 18–18–102(17), 6 C.R.S. (2000).[7]

"Possession" of a controlled substance does not have a statutory definition. The Colorado Jury Instructions identify the term to mean "the actual, physical possession, or the immediate and knowing dominion or control over the object or the thing allegedly possessed." CJI–Crim. 36(11).

■■■ Comparing the meanings of "manufacture" and "possession", it is evident that one who manufactures a controlled substance also possesses the substance in the course of manufacturing it. "Possession" requires immediate and knowing control over the substance. Logic dictates that such control is required in the production of the substance. This type of possession is therefore a lesser-included offense of the crime of manufacture.

In *People v. Villapando,* 984 P.2d 51 (Colo. 1999), a defendant was charged with the unlawful use of marijuana and the possession of contraband (marijuana) in the first degree. After examining the definitions of "use" and "possession," we determined that "while it is possible to possess a controlled substance without using it, we can envision no scenario in which an individual could voluntarily use a controlled substance without first possessing it." *Id.* at 54. We therefore concluded that "the voluntary use of a controlled substance assumes possession." *Id.* at 55; *see also People v. Cagle,* 751 P.2d 614, 620 (Colo.1988)(noting that "[t]o use the [psilocybin] mushroom, [the defendant] must first possess it"). Similarly, we can envision no scenario in which an individual can manufac-

ture methamphetamine without also possessing it. *See id.* at 54.

■■■ However, if the possession and the manufacture convictions are distinct offenses, criminal liability for both possession and manufacture may attach under section 18–18–405 without offending double jeopardy protections. *See People v. Williams,* 996 P.2d 237, 243 (Colo.App.1999)(recognizing that section 18–18–405(1)(a) punishes multiple drug offenses); *see also People v. Melillo,* 25 P.3d 769, 778–79 (Colo.2001)(multiple sexual assaults on a child). The relevant question is whether the possession charge and the manufacturing charge "are directed at different sorts of criminal conduct which may be independently punished." *People v. Bloom,* 195 Colo. 246, 248–49, 577 P.2d 288, 290 (1978)(possession of a controlled substance is not a lesser-included offense of the sale of a controlled substance); *see also People v. Holcomb,* 187 Colo. 371, 374, 532 P.2d 45, 46 (1975)(same). For example, a defendant may be convicted lawfully of both manufacture and possession of a controlled substance if the defendant is convicted of possessing the substance during one time period and manufacturing it in another time period, or separate transactions of possession and manufacture in the same time period. *See People v. Thurman,* 948 P.2d 69 (Colo.App.1997)(distribution, possession, and conspiracy); *United States v. Miller,* 870 F.2d 1067 (6th Cir.1989)(unlawful manufacture and possession); *United States v. Zamora,* 784 F.2d 1025 (10th Cir.1986)(same).

We now examine Patton's plea of guilty to both possession and manufacture of methamphetamine.

### C. Patton's Guilty Plea

■■■ A presumption of regularity and validity attaches to a judgment of conviction resulting from a guilty plea. *See People v. Naranjo,* 840 P.2d 319, 325 (Colo.1992); *People v. McClellan,* 183 Colo. 176, 178, 515 P.2d 1127, 1128 (1973). This presumption applies to collateral attacks on the conviction "even when the question is waiver of constitutional

---

7. The definition does not include activities by a practitioner in the course of the practitioner's

professional practice. § 18–18–102(17).

rights." *Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). Consequently, "[a] defendant seeking to set aside a prior conviction obtained as the result of a guilty plea must initially make a prima facie showing that the guilty plea was constitutionally infirm." *People v. Wade,* 708 P.2d 1366, 1368 (Colo.1985).

■ A plea agreement acts as a contract that sets forth the obligations of both the prosecution and defense, as well as the consideration both sides obtained. *Johnson,* 999 P.2d at 829. The agreement must be attended by constitutional safeguards to ensure that the defendant is treated fairly by the government. *Id.* Once a valid agreement is reached, neither side may deprive the other of the benefit of its bargain. *Id.* at 832. Here, the prosecution dropped nearly all charges against Patton, consolidated two separate manufacturing charges into one, and kept only one charge of possession. In return, Patton relieved the prosecution of its burden of proving him guilty at trial of one manufacturing charge and one possession charge. Patton seeks to set aside his conviction and sentence for possession based on a Double Jeopardy claim.

■ Under *Blackledge, Menna,* and *Broce,* a guilty plea does not waive a valid double jeopardy claim of being punished twice for the same offense. We must determine whether the charges against Patton, "judged on the basis of the record that existed at the time the guilty plea was entered, [are] one[s] that the State may not constitutionally prosecute." *United States v. Kaiser,* 893 F.2d 1300, 1302 (11th Cir.1990). If the conviction appears on its face to be for possession of the controlled substance in connection with its manufacture, we must vacate the possession conviction as a lesser-included offense of the manufacture. The record of the charges against Patton at the time of the providency hearing supports his double jeopardy claim.

■ Pursuant to the plea bargain, Patton pleaded guilty to counts 17 and 18. Originally, these counts alleged manufacture and possession in the same time period:

That on or between the 1st day of October, 1996 and the 4th day of February, 1997, in the County of Moffat, State of Colorado:

## COUNT XVII

Brand Mitchell Patton did unlawfully and knowingly, MANUFACTURE a Schedule II controlled substance, to-wit: Methamphetamine/Amphetamine; in violation of C.R.S. 18–18–204 and 18–18–405(1)(a)(2)(a)(I), as amended UNLAWFUL DISTRIBUTION, MANUFACTURING, DISPENSING, SALE, AND POSSESSION OF A CONTROLLED SUBSTANCE SCHEDULE II(F–3).

## COUNT XVIII

Brand Mitchell Patton did unlawfully and knowingly possess a Schedule II controlled substance, to-wit: Methamphetamine/Amphetamine in violation of C.R.S. 18–18–405(1)(a)(2)(a)(I) and 18–18–204, as amended UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE SCHEDULE II(F–4).

The amended counts to which Patton pleaded guilty extended the period of manufacture an additional five months:

That on or between the 1st day of October, 1996 and the 17th day of July, 1997, in the County of Moffat, State of Colorado:

## COUNT XVII

Brand Mitchell Patton did unlawfully and knowingly, MANUFACTURE a Schedule II controlled substance, to-wit: Methamphetamine/Amphetamine; in violation of C.R.S. 18–18–204 and 18–18–405(1)(a)(2)(a)(I), as amended UNLAWFUL DISTRIBUTION, MANUFACTURING, DISPENSING, SALE, AND POSSESSION OF A CONTROLLED SUBSTANCE SCHEDULE II(F–3).

That on or between the 1st day of October, 1996 and the 4th day of February, 1997, in the County of Moffat, State of Colorado:

### COUNT XVIII

Brand Mitchell Patton did unlawfully and knowingly possess a Schedule II controlled substance, to-wit: Methamphetamine/Amphetamine in violation of C.R.S. 18–18–405(1)(a)(2)(a)(I) and 18–18–204, as amended UNLAWFUL POSSESSION OF A CONTROLLED SUBSTANCE SCHEDULE II(F–4).

Under the structure of the counts upon which the convictions were based, the greater period of manufacture (alleged as a class 3 felony) included the lesser period of possession (alleged as a class 4 felony). The counts did not set forth distinct periods or transactions that would differentiate the possession charge from being anything other than a lesser-included offense of manufacture. *Cf. Broce*, 488 U.S. at 570, 109 S.Ct. 757 ("Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes.").

▇▇▇ The double jeopardy clauses prevent conviction and cumulative punishment for the greater and lesser included offense when the legislature has not provided for such punishment. *See Kaiser*, 893 F.2d at 1303 ("While the government may charge a defendant with both a greater and a lesser included offense and may prosecute those offenses at a single trial, the court may not enter separate convictions or impose cumulative punishments for both offenses unless the legislature has authorized such punishment.").

▇▇▇ Under the applicable double jeopardy test for guilty pleas, we must base our decision on the structure of the information and guilty plea at the time of the providency hearing and cannot inquire into the facts underlying the guilty plea or take into account statements made at the sentencing hearing. *See Broce*, 488 U.S. at 574–75, 109 S.Ct. 757 (factual inquiry foreclosed by guilty plea); *Taylor v. Whitley*, 933 F.2d 325, 328 (5th Cir.1991)(double jeopardy violation must appear on the face of the indictments or record). Section 18–1–408(1)(a) prohibits the conviction of both the greater and lesser

included offense. *See Leske*, 957 P.2d at 1035–36 n. 8 (observing that strict elements test examines charging document and does not involve an analysis of the evidence at trial).

▇▇▇ Here the double jeopardy violation appears on the face of the information and guilty plea record. A different case would have been presented if the counts to which Patton pleaded guilty recited that the period of the possession exceeded the period of manufacture or that Patton possessed the controlled substance independently of his manufacture of it, for example, as a result of obtaining it from another source. We conclude that Patton pleaded guilty to both the greater and lesser included offenses for the same transaction. The double jeopardy clauses require us to vacate the lesser-included offense because our legislature has not provided for separate punishment under these circumstances.

### III.

Accordingly, we reverse the judgment of the court of appeals. We remand this case with an instruction for the trial court to vacate the possession conviction and sentence.

Justice COATS dissents, and Justice RICE joins in the dissent.

Justice KOURLIS does not participate.

Justice COATS, dissenting:

Although the majority ostensibly agrees that a guilty plea is subject to collateral attack for placing the defendant in jeopardy twice for the same offense only to the extent that the identity of the offenses appears on the face of the providency hearing record, it ultimately finds a violation for the reason that nothing on the face of the separate counts of manufacturing and possessing to which the defendant pleaded guilty indicated whether they involved the same contraband. This holding amounts to nothing less than a presumption of identity from an absence of specific allegations to the contrary. Because I consider this presumption to be irreconcilable with the Supreme Court's prohibition

against developing an additional record to establish a double jeopardy violation, and because the record of the providency hearing in this case demonstrates the defendant's deliberate choice to plead guilty to separate charges of manufacturing a controlled substance and possessing a controlled substance, in exchange for the dismissal of numerous other drug-related charges, I respectfully dissent.

As the majority notes, once a guilty plea has become final, a challenge to its validity is ordinarily confined to whether it was effectively counseled and voluntary.[1] Maj. op. at 128; *United States v. Broce*, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). A narrow exception exists where on the face of the record it appears that the court had no power to enter the conviction or impose the sentence, for reasons including the double jeopardy bar against entering multiple convictions for the same offense. *Broce*, 488 U.S. at 569, 575–76, 109 S.Ct. 757. By pleading guilty rather than forcing the government to prove the charges against him, however, the defendant waives any right to a separate evidentiary hearing to establish such a bar. *Id.* Even if guilty pleas to charges with facial allegations of distinct offenses could be shown in fact to violate the Double Jeopardy Clause, a collateral attack on jeopardy grounds is insufficient unless the identity of the offenses appears on the face of the record. *See Taylor v. Whitley*, 933 F.2d 325, 328 (5th Cir.1991).

Although the conspiracy indictments involved in *Broce* were sufficiently distinguishable by dates of commission and objectives that the defendants could not have proved their claim of a single conspiracy without actually contradicting the indictments, the Supreme Court made clear that it was enough for denial of post-conviction relief that they could not prove their claim by merely relying on the indictments and the existing record. *Broce*, 488 U.S. at 576, 109 S.Ct. 757. Whether the charges to which a defendant pleads guilty are challenged as violations of the same criminal proscription or as the same offenses only in the sense that the elements of one are necessarily included in the other,[2] the record, on its face, must conclusively demonstrate that they are duplicative. *See Dermota v. United States*, 895 F.2d 1324, 1325–26 (11th Cir.1990) (no double jeopardy violation because separate counts of transporting and possessing unregistered firearms over several months were not facially the same transaction); *United States v. Kaiser*, 893 F.2d 1300, 1301–03 (11th Cir.1990) (double jeopardy violation because specification of identical tax returns in charges made clear from the face of the indictments that false return counts were lesser included offenses of tax evasion counts). The fact that the charging documents and providency hearing fail to identify the separate acts or incidents from which facially distinct guilty pleas arise does not conclusively demonstrate that they charge the same offense and therefore that guilty

1. Although the majority lists a number of rights that the defendant waives by pleading guilty and indicates that the court must advise the defendant of the rights he will waive if the court accepts his plea, maj. op. at 127–128 & n. 3, its reliance on *People v. Wade*, 708 P.2d 1366 (Colo. 1985), for this proposition leads me to believe that it actually intends only that the advisement include the requirements of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and Crim. P. 11, and that compliance with Crim. P. 11 be deemed supportive of the conclusion that the defendant's plea was entered voluntarily and understandingly. *See Wade* 708 P.2d at 1369–70.

2. While it may not be of particular significance to the question of former jeopardy, I do not agree with the majority that possession is properly characterized as a lesser included offense of manufacturing, even when both involve the same

substance. They are actually alternate ways of committing the same crime, *see* § 18–18–405, and although the legislature subsequently reduced the penalty for merely possessing a controlled substance, it did so as a sentencing consideration for the same crime, rather than by creating a separate crime of possession. Depending upon the specific content of the charge and the evidence presented at trial, it may therefore become necessary, through interrogatory or some other mechanism, to distinguish a finding of possession from the other ways of committing the offense, but it is not a lesser included offense. *See Rowe v. People*, 856 P.2d 486 (Colo.1993) (because the legislature did not create separate offense of heat-of-passion assault, there is no offense to classify as either lesser included offense or lesser nonincluded offense, although single crime of first degree assault may have different sentences depending on mitigating factor).

pleas to both violate the Double Jeopardy Clause. *See United States v. Makres,* 937 F.2d 1282, 1286 (7th Cir.1991) ("The fact that the original Rule 11 inquiry does not demonstrate affirmatively that each check was negotiated at a different place and at a different time does not require another result.")

That the narrow exception to the bar to such collateral challenges does not extend to all convictions that *might be* the same or included offenses, but is limited to convictions that on the face of the pleas *necessarily are* the same offense, is clear from the very nature of, and policy permitting, guilty pleas. A guilty plea is an admission of guilt of a substantive crime, which can be entered only by the voluntary and intelligent choice of the defendant. *Broce,* 488 U.S. 563, 109 S.Ct. 757. The factual basis for a guilty plea, which is required for the defendant's benefit, may be waived by him if his plea is the result of a plea agreement. Section 16–7–207(2)(f), 6 C.R.S. (2001); Crim. P. 11(b)(6). In fact, a defendant may plead guilty to an offense that he simultaneously claims not to have committed, if, in light of the evidence against him, it is tactically in his best interest to do so. *North Carolina v. Alford,* 400 U.S. 25, 27, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *People v. Birdsong,* 958 P.2d 1124, 1128 (Colo.1998). A voluntary and intelligent guilty plea waives the process to which a defendant would otherwise be entitled and the defenses that he might otherwise raise, whether or not he is conscious of or intends that waiver. *Broce,* 488 U.S. at 570–73, 109 S.Ct. 757; *Taylor,* 933 F.2d at 329–30. He may not, however, plead guilty to an offense that does not exist or of which he cannot legally be convicted. *Broce; Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975); *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974). The narrow exception merely recognizes that although the defendant has waived any opportunity to separate-ly prove it, his plea cannot stand if it is necessarily one that the court lacks the power to enter.

The defendant in this case pleaded guilty to separate counts charging two separate "acts" prohibited by section 18–18–405, 6 C.R.S. (2001)—possession and manufacture—and waived his right to a factual basis distinguishing them. When the legislature created the crime of "Unlawful distribution, manufacturing, dispensing, sale, or possession," now codified at section 18–18–405, it made clear that the crime was committed by virtually any unauthorized, knowing behavior with a controlled substance, including manufacturing it, selling it, dispensing it, distributing it (even without remuneration), or possessing it, or by inducing, attempting to induce, or conspiring with any one else to do any of these things. While knowingly doing any of these things with regard to a controlled substance constitutes the commission of the offense, the statute does not require as a legal matter that all such activity taking place within a specific time frame be treated as a single act or constitute a single offense. Furthermore, while it may be impossible as a logical or definitional matter to personally manufacture a controlled substance without, at least momentarily, possessing it, it is clearly possible to possess a controlled substance without having manufactured it. A charge of possession is therefore the same as, or necessarily included within, a charge of manufacturing only if the controlled substance that the defendant is charged with possessing is the same controlled substance that he is charged with manufacturing.

By acknowledging that a different case would be presented if the charges specified that the contraband possessed by the defendant came from a different source, maj. op. at 133, the majority apparently accepts as much but would shift the burden to the People[3] to charge with sufficient specificity to

3. In what may be intended as a limitation on the requirement for facially duplicative charges to establish a double jeopardy violation, the majority relies on *People v. Wade,* 708 P.2d 1366, 1368 (Colo.1985), for the proposition that "[a] defendant seeking to set aside a prior conviction obtained as the result of a guilty plea must initially make a prima facie showing that the guilty plea was constitutionally infirm." Maj. op. at 132. To the extent that the court intends, as *Wade* indicates, that the burden of persuasion then shifts to the People to demonstrate that the plea is nevertheless not constitutionally infirm, it confuses the standards for precluding the admission of evidence of a prior plea for the purpose of establishing the defendant's guilt or enhancing

preclude the possibility that a separate count in the same time frame could be read to charge the same or a lesser-included offense. In my view this broad rule presuming a double-jeopardy violation whenever separate counts charging facially different acts in the same time period could be construed as charging the same offense not only alters existing law but will work considerable mischief. It will presumably void, for instance, pleas to lesser-included forms of assaulting or menacing the same victim during the same time period as that covered by a plea to a greater offense, in the absence of language specifying that they actually arise from different incidents.

Unlike the majority, I would hold that in the absence of express allegations that the contraband manufactured by the defendant is also the subject of his possession charge, separate counts of possessing a controlled substance and manufacturing a controlled substance, without more, constitute "facial allegations of distinct offenses," *Broce*, 488 U.S. at 570, 109 S.Ct. 757, sufficient to support guilty pleas to each. By his voluntary and intelligent choice to enter pleas to each, a defendant waives any right to go beyond the face of the record and attempt to prove, as a matter of fact, that the drugs he manufactured and possessed were the same, and therefore that the charges arose from the same transaction. While purporting to rely on *Broce*, the majority actually stands *Broce* on its head. By presuming the very facts that are necessary to establish the identity of the charges, which *Broce* would bar the defendant from separately attempting to prove, the majority makes the defendant rather than the government the beneficiary of the limitation against developing evidence outside the record. In my opinion, this pre-

sumption misinterprets the holdings of the United States Supreme Court and runs counter to the beneficial purposes of guilty pleas by, in effect, creating technical pleading requirements that merely provide a windfall to defendants who have made a deliberate choice in their own best interests, at a substantial cost to the interests of justice.

I therefore respectfully dissent. I am authorized to state that Justice RICE joins in this dissent.

---

his punishment for another offense, to which *Wade* referred, with those for actually vacating a guilty plea as unconstitutional in post-conviction proceedings, as the defendant attempts to do in this case. Unlike the former situation, which merely involves a challenge to the admissibility of evidence of a prior plea for a particular purpose, *see Wright v. People*, 690 P.2d 1257 (Colo. 1984) (failure of People to meet their burden does not vacate plea or bar relitigation of same issue in other proceedings), we have held that a defendant who seeks to vacate a guilty plea in

post-conviction proceedings bears the burden of establishing his claim by a preponderance of the evidence. *See, e.g., People v. McClellan*, 183 Colo. 176, 178, 515 P.2d 1127, 1128 (1973) (cited favorably by the majority in the preceding sentence); *see also People v. Malouff*, 721 P.2d 159, 160 (Colo.App.1986). Even if I did not consider this articulation of the defendant's post-conviction burden to be erroneous, I do not believe that limitation of the defendant's obligation to a prima facie showing could alter the requirement that the charges on their face be necessarily duplicative.